IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                  No. CR 08-0823 JB

ROSARIO AGUIRRE-GARCIA, and
ROBERTO DUARTE SNYDER,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Minor Role Adjustment, filed February 17, 2009 (Doc. 72). The Court held an evidentiary sentencing hearing on March 10, 2009, and continued the hearing on July 8, 2009. Initially, the United States objected to the application of the safety valve to both Defendant Rosario Aguirre-Garcia and Defendant Roberto Duarte Snyder. At the July 8, 2009 hearing, the United States withdrew its objection to Aguirre-Garcia receiving the benefit of the safety valve. The primary issue is whether the Court should grant Aguirre-Garcia's request for a minor-role adjustment in his offense level. For the reasons stated at the hearing, and for further reasons consistent with those already stated, the Court will deny Aguirre-Garcia's motion for a minor-role adjustment, but will grant a variance for a sentence below the applicable guideline imprisonment range.

## FACTUAL BACKGROUND

Aguirre-Garcia and Mr. Snyder submitted to the Court a Joint Sentencing Declaration ("JSD") divulging information about the offenses with which they are charged. They contend that this declaration establishes their eligibility for the safety valve. The facts recounted here are drawn from that declaration.

While living in Tucson, Arizona, Aguirre-Garcia was working as a mechanic out of his apartment. One of his customers was an old man. Aguirre-Garcia was having hard times financially, so when the old man told Aguirre-Garcia that he knew of a homeless couple looking for a place to live who could pay half the rent, Aguirre-Garcia accepted the offer. That couple was the Snyders -- Mr. Snyder and his wife, Defendant Rita Snyder -- who were "homeless, drug users, and desperate." JSD at 2. "[P]ersons unknown" had directed Mr. Snyder to contact the old man, who recruited him to transport drugs and told "Mr. Snyder that he would provide the Snyders a place to live, money, and drugs." Id.

Mr. Snyder received a cellular telephone from the old man. Someone called Mr. Snyder on that telephone, telling him to go live with Aguirre-Garcia. Later, someone again called and told Mr. Snyder that "they would be delivering a vehicle that would be titled in the name of Rita Theresa Snyder." Id. "Someone unknown" then delivered a vehicle, and Mr. Snyder had Mrs. Snyder sign the papers to transfer title to her. Id.

In March 2008, someone called, and talked to both Mr. Snyder and Aguirre-Garcia, telling them that they would transport drugs in the vehicle, in return for money and drugs for the Snyders, and cash for Aguirre-Garcia. They agreed, though Mrs. Snyder was not told what they were doing. Another call came and Mr. Snyder, as directed, left the keys to the vehicle outside the apartment. "[S]omeone unknown took the vehicle and returned it a short time later, apparently loaded with drugs," expense money, and a small amount of cocaine for the Snyders' personal use. Id. at 3.

After another call to Mr. Snyder, all three drove to a motel in Ohio. When they got there, someone called Mr. Snyder and told him to leave the keys in the vehicle. Mr. Snyder complied, and again someone unknown took the vehicle and returned it a short time later with more expense money and cocaine for the Snyders. When the trio returned to Tucson, someone left $4,000.00 in the

vehicle for Aguirre-Garcia.

In April 2008, Mr. Snyder got another call, this one instructing that the three would transport drugs to Nebraska. Aguirre-Garcia said he did not want to deliver drugs any more, but that he would take a ride to Nebraska where he thought he could find more work. The same routine of leaving keys out in the vehicle, with someone taking it and returning it later with expense money, some cocaine for the Snyders, and "apparently" with the drugs to be shipped, was repeated. Id. Aguirre-Garcia packed his belongings, including his tools, in the vehicle and they set out for Nebraska. They only made it to New Mexico, however, at which point they were stopped and arrested.

According to the United States, the three were arrested when law enforcement found eight kilograms of cocaine in a compartment behind the radiator of the vehicle. Aguirre-Garcia gave a post-arrest statement taking responsibility for the cocaine and indicating that he had made a previous trip to Ohio as well. The earlier trip, he said, involved only four kilograms of cocaine.

## PROCEDURAL BACKGROUND

All three Defendants were indicted on charges of conspiracy under 21 U.S.C. § 826, and of possessing with intent to distribute over five kilograms of cocaine in violation of § 841(a)(1) and (b)(1)(A). All three Defendants debriefed the United States. According to the United States, there are material conflicts between the debriefs, meaning that at least one of the Defendants is lying.

On July 10, 2008, after he was indicted, Aguirre-Garcia gave a second statement to law enforcement. This time he stated that he was not involved with the eight-kilogram shipment, but was only accepting a ride to Omaha, Nebraska. He still admitted to being involved in the earlier trip to Ohio, but said everything he did was at Mr. Snyder's direction.

The United States Probation Office's Presentence Investigation Reports indicated that Aguirre-Garcia and Mr. Snyder would be eligible for application of the safety-valve provision found

in 18 U.S.C. § 3553(f).  On March 2, 2009, however, the United States filed an objection to the applicability of the safety valve as to Mr. Snyder and Aguirre-Garcia, contending that their proffers were inadequate.  At the July 8, 2009 hearing, however, the United States withdrew its objection to the applicability of the safety valve as to Aguirre-Garcia:

> THE COURT: All right.  Do I understand correctly, Ms. Ramirez, that the United States is now withdrawing its objection to the presentence report about the safety valve?
>
> MS. RAMIREZ: We are, Your Honor.

Transcript of Hearing at 5:1-4 (taken July 8, 2009)(Court, Ramirez).[1]  The Court therefore accepts the representation in the PSR that Aguirre-Garcia is eligible for application of the safety-valve provision of 18 U.S.C. § 3553(f).  On February 17, 2009, Aguirre-Garcia filed a motion requesting a minor-role adjustment to his sentence, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 3B1.2 and 2D1.1(a)(3).  See Motion at 1.

## LAW REGARDING MINOR ROLE ADJUSTMENT

Section 3B1.2 provides for a 2 to 4 level downward adjustment of a criminal defendant's offense level if the criminal was a "minor" or "minimal" participant in the crime for which he or she is being sentenced.  U.S.S.G. § 3B1.2.  The United States Court of Appeals for the Tenth Circuit has determined that this downward adjustment is in the district court's discretion, and should be granted only if the court finds that the defendant is less culpable than the other participants in the particular offense.  See United States v. Santistevan, 39 F.3d 250, 254 (10th Cir. 1994).  It is the defendant's burden to prove, by a preponderance of the evidence, that he was a minor participant.  See United States v. Mendez, 272 Fed. Appx. 703, 705 (10th Cir. 2008)(citing United States v. James, 157 F.3d

---

[1] The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain different page and/or line numbers.

1218, 1219 (10th Cir. 1998)).

> The commentary to the Guidelines, which is authoritative unless it conflicts with federal law, states the four-level decrease for "minimal" participation will be used infrequently and should be reserved for defendants who are plainly among the least culpable of those involved in the conduct of a group. The two-level decrease for "minor" participation applies to individuals who are less culpable than most other participants, but whose role could not be described as minimal. Finally, the Guidelines permit a three-level decrease for an individual whose culpability is somewhere between that of either a minimal or a minor participant.

United States v. Santistevan, 39 F.3d at 254 (internal citations and quotes omitted).

The Tenth Circuit has repeatedly addressed the situation in which a drug courier requests a downward adjustment of offense level based on U.S.S.G. § 3B1.2. See, e.g., United States v. Martinez, 512 F.3d 1268, 1276 (10th Cir. 2008); United States v. Rangel-Arreola, 991 F.2d 1519, 1524 (10th Cir. 1993); United States v. Calderon-Porras, 911 F.2d 421, 423 (10th Cir. 1990); United States v. Arredondo-Santos, 911 F.2d 424, 426 (10th Cir. 1990). The Tenth Circuit has consistently held that a defendant being a courier does not, ipso facto, render him or her a minor participant:

> [W]e have consistently refused to adopt a per se rule allowing a downward adjustment based solely on a defendant's status as a drug courier. We explained, [d]rug couriers are an indispensable component of drug dealing networks. To debate whether couriers as a group are less culpable would [be] akin to the old argument over which leg of a three-legged stool is the most important leg.

United States v. Martinez, 512 F.3d at 1276 (internal quotes and citations omitted). Courts must therefore make a fact-intensive inquiry whether the courier was, for reasons other than his or her mere status as a courier, a minor or minimal participant in the relevant crimes.

## **ANALYSIS**

The Court does not find that a minor role adjustment is appropriate in this case. The record does not reflect that Aguirre-Garcia was substantially less culpable than the average participant. In fact, it appears that all three defendants -- Aguirre-Garcia, Mr. Snyder, and Mrs. Snyder -- were the

average participants in this particular crime. Aguirre-Garcia knew that he was to be transporting drugs and placed the drugs into the vehicle in preparation for the trip in which he was apprehended. Aguirre-Garcia has not met his burden of showing that he should be considered a minor participant as compared to his co-defendants or to others in the criminal enterprise. The Court will thus not apply a downward offense-level adjustment in this case.

On the other hand, the Court finds that the facts of this case warrant a variance to a sentence below the guideline range. Aguirre-Garcia's offense level is 27 and his criminal history category is I, resulting in an advisory guideline sentence range of 70 to 87 months. The Court has considered the guideline range established for the applicable category of offense committed by the applicable category of defendant. The Court has also taken into consideration other sentencing goals. Specifically, the Court has also considered the factors set forth in 18 U.S.C. § 3553(a)(1)-(7).

The Court has found that Aguirre-Garcia is eligible for the safety valve under 18 U.S.C. § 3553(f), and thus the Court has the power to impose a sentence "without regard to any statutory minimum sentence." Id. The Court believes that, because Aguirre-Garcia's only role un the underlying crimes was as a courier, a sentence of 57 months better reflects the seriousness of the offense that Aguirre-Garcia has committed. The Court believes that this sentence will promote respect for the law, provide just punishment, and afford adequate deterrence. While the sentence varies from the suggested range under the Sentencing Guidelines, it is a more reasonable sentence and more faithfully promotes the sentencing goals Congress laid down in 18 U.S.C. § 3553(a). Furthermore, although the Court does not believe that Aguirre-Garcia meets the Sentencing Guidelines' definition of a minor participant, Aguirre-Garcia's role as a drug courier warrants some variance. Such individuals are often given lower sentences in this District and elsewhere along the border, and the Court believes that a sentence in line with what would be, under the Guidelines, an

offense level of 25 is necessary to avoid producing unwarranted sentencing disparities. Aguirre-Garcia is thus more similarly situated to someone facing an advisory sentence of 57 to 71 months. A sentence of 57 months is appropriate.

A sentence within the guidelines range would be excessive here and would contravene Congress' command that courts impose sentences that are sufficient but not greater than is necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act. The Court recognizes the seriousness of the offense Aguirre-Garcia committed, but believes that the sentence it imposes sufficiently takes that factor into account. A 57-month sentence is a serious sentence. A longer sentence would be unnecessarily punitive and would not serve any useful purpose. The sentence the Court imposes varies from the guidelines, but in these circumstances, such a sentence more effectively promotes the goals outlined in 18 U.S.C. § 3553(a).

**IT IS ORDERED** that Defendant Aguirre-Garcia's request for a minor-role adjustment in Defendant's Motion for Minor Role Adjustment is denied, but his request for a variance is granted. The Court sentences Aguirre-Garcia to a term of 57 months in the custody of the Bureau of Prisons.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
  United States Attorney
Elaine Y. Ramirez
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Margaret A. Katze
  Assistant Federal Public Defender
Albuquerque, New Mexico

    *Attorney for Defendant Rosario Aguirre-Garcia*

David A. Streubel
Streubel, Kochersberger & Mortimer, LLC
Albuquerque, New Mexico

    *Attorney for Defendant Roberto Duarte Snyder*