**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. CR 08-0823 JB

ROSARIO AGUIRRE-GARCIA, and
ROBERTO DUARTE SNYDER,

Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the United States' Objections to Application of U.S.S.G. § 5C1.2(a)(1)-(5) as to Defendants Rosario Aguirre-Garcia and Roberto Duarte Synder, filed March 2, 2009 (Doc. 74). The Court held an evidentiary sentencing hearing on March 10, 2009, and continued the hearing on July 8, 2009. Initially, the United States objected to the application of the safety valve to both Defendant Rosario Aguirre-Garcia and Defendant Roberto Duarte Snyder. At the July 8, 2009 hearing, the United States withdrew its objection to Aguirre-Garcia receiving the benefit of the safety valve. The primary issue is thus whether Mr. Snyder has established, by a preponderance of the evidence, that he has truthfully provided to the United States all information of evidence he has concerning his offenses. For the reasons stated at the hearing, for further reasons consistent with those already stated, and because the Court concludes that Mr. Snyder has not shown, by a preponderance of the evidence, that he has provided all the information that he has, the Court will sustain the remaining objection and find that Mr. Snyder does not qualify for relief from the mandatory minimum sentence under the safety valve.

## FACTUAL BACKGROUND

Mr. Snyder and Aguirre-Garcia submitted to the Court a Joint Sentencing Declaration ("JSD") divulging information about the offenses with which they are charged. They contend that this declaration establishes their eligibility for the safety valve. The facts recounted here are drawn from that declaration.

While living in Tucson, Arizona, Aguirre-Garcia was working as a mechanic out of his apartment. One of his customers was an old man. Aguirre-Garcia was having hard times financially, so when the old man told Aguirre-Garcia that he knew of a homeless couple looking for a place to live who could pay half the rent, Aguirre-Garcia accepted the offer. The couple was the Snyders -- Mr. Snyder and his wife, Defendant Rita Snyder -- who were "homeless, drug users, and desperate." JSD at 2. "[P]ersons unknown" had directed Mr. Snyder to contact the old man, who recruited him to transport drugs and told "Mr. Snyder that he would provide the Snyders a place to live, money, and drugs." Id.

Mr. Snyder received a cellular telephone from the old man. Someone called Mr. Snyder on that telephone, telling him to go live with Aguirre-Garcia. Later, someone again called and told Mr. Snyder that "they would be delivering a vehicle that would be titled in the name of Rita Theresa Snyder." Id. "Someone unknown" then delivered a vehicle, and Mr. Snyder had Mrs. Snyder sign the papers to transfer title to her. Id.

In March 2008, someone called, and talked to both Mr. Snyder and Aguirre-Garcia, telling them that they would transport drugs in the vehicle, in return for money and drugs for the Snyders, and cash for Aguirre-Garcia. They agreed, though Mrs. Snyder was not told what they were doing. Another call came and Mr. Snyder, as directed, left the keys to the vehicle outside the apartment. "[S]omeone unknown took the vehicle and returned it a short time later, apparently loaded with

drugs," expense money, and a small amount of cocaine for the Snyders' personal use. Id. at 3.

After another call to Mr. Snyder, all three drove to a motel in Ohio. When they got there, someone called Mr. Snyder and told him to leave the keys in the vehicle. Mr. Snyder complied, and again someone unknown took the vehicle and returned it a short time later with more expense money and cocaine for the Snyders. When the trio returned to Tucson, someone left $4,000.00 in the vehicle for Aguirre-Garcia.

In April 2008, Mr. Snyder got another call, this one instructing that the three would transport drugs to Nebraska. Aguirre-Garcia said he did not want to deliver drugs any more, but that he would take a ride to Nebraska where he thought he could find more work. The same routine of leaving keys out in the vehicle, with someone taking it and returning it later with expense money, some cocaine for the Snyders, and "apparently" with the drugs to be shipped, was repeated. Id. Aguirre-Garcia packed his belongings, including his tools, in the vehicle and they set out for Nebraska. They only made it to New Mexico, where they were stopped and arrested.

According to the United States, the three were arrested when law enforcement found eight kilograms of cocaine in a compartment behind the radiator of the vehicle. Aguirre-Garcia gave a post-arrest statement taking responsibility for the cocaine and indicating that he had made a previous trip to Ohio as well. The earlier trip, he said, involved only four kilograms of cocaine.

**PROCEDURAL BACKGROUND**

All three Defendants were indicted on charges of conspiracy under 21 U.S.C. § 826, and of possessing with intent to distribute over five kilograms of cocaine in violation of § 841(a)(1) and (b)(1)(A). All three debriefed the United States. According to the United States, there are material conflicts between the debriefs, meaning that at least one of the Defendants is lying.

On July 10, 2008, after he was indicted, Aguirre-Garcia gave a second statement to law

enforcement. This time he stated that he was not involved with the eight-kilogram shipment, but was only accepting a ride to Omaha, Nebraska. He still admitted to being involved in the earlier trip to Ohio, but said everything he did was at the direction of Mr. Snyder.

On April 4, 2008, Mr. Snyder gave a post-arrest statement denying any knowledge of cocaine in the vehicle. According to the United States, on February 13, 2009, Mr. Snyder sent them a deficient safety-valve proffer, which prompted the United States to request more information. On February 25, 2009, the United States received additional information indicating that Mr. Snyder worked for persons unknown who arranged for the Snyders to live with Aguirre-Garcia.

The United States Probation Office disclosed the Presentence Investigation Report ("PSR") for Mr. Snyder on December 30, 2008. The PSR stated that he appeared to meet the criteria in 18 U.S.C. § 3553(f) and was eligible for the safety valve, and thus eligible to be sentenced below the statutory minimum. On March 2, 2009, the United States filed its objection, contending that Mr. Snyder's and Aguirre-Garcia's proffers were inadequate.

At the sentencing hearing on March 2, 2009, Mr. Snyder and Aguirre-Garcia submitted their joint declaration to the Court, which had been provided earlier to the United States and which they assert clears up any alleged inconsistences. See Transcript of Hearing at 4:20-5:3 (Katze)(taken March 2, 2009).[1] Drug Enforcement Administration Special Agent Thomas Solis testified that he thought it would be unusual that someone would entrust eight kilograms of cocaine to a courier that was unknown to the dealer. See id. at 28:8-29:5 (Ramirez, Solis, Streubel & Court). Solis testified that the total value of twelve kilograms of cocaine was about $300,000.00. See id. at 41:2-16 (Ramirez & Solis). Solis also testified that it was common for vehicles to be transporting drugs to

[1] The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions. Any final transcripts may contain different page and/or line numbers.

be watched by an escort vehicle hired by the dealer. See id. at 49:19-50:19 (Katze, Solis, Ramirez & Court). Solis also conceded that he could not say that the final proffer David Streubel, Mr. Snyder's counsel, sent to the United States, was inconsistent with the joint declaration. See id. at 62:3-8 (Streubel & Solis).

After hearing evidence and argument, the Court expressed its concern that, while it did not necessarily think that their statements were false, it was concerned with Aguirre-Garcia's and Mr. Snyder's statements being thin on details. See id. at 72:9-13 (Court). The United States said it was willing to receive further debriefing, as long as the Defendants did not do so in the presence of each other. See id. at 74:9-75:4 (Ramirez & Court). At Aguirre-Garcia's and Mr. Snyder's request, the Court continued the hearing to allow them to make further proffers to the United States. See id. at 71:18-72:4 (Katze); id. at 78:1-5 (Streubel).

When the hearing resumed on July 8, 2009, the United States withdrew its objection to Aguirre-Garcia receiving the safety valve. See Transcript of Aguirre-Garcia Hearing at 5:1-4 (Court & Ramirez)(taken July 8, 2009). Regarding Mr. Snyder, Mr. Streubel informed the Court that Mr. Snyder had provided no new information since the last hearing, but that he maintained that Mr. Snyder's debriefing was adequate. See Transcript of Snyder Hearing at 2:12-17 (Streubel)(taken July 8, 2009). Mr. Streubel acknowledged that there was no materiality requirement to the information to be provided for the safety valve, but argued that the United States must nonetheless present some evidence showing that a defendant's proffer was incomplete. See id. at 4:12-6:3 (Streubel & Court). Mr. Streubel contended that the United States had provided only an agent's speculation that Mr. Snyder must know more than he is telling. See id. at 6:4-10 (Streubel). Elaine Ramirez, the Assistant United States Attorney, argued that Mr. Snyder's failure to sit down and talk with agents generally posed a problem, because while the United States could give a list of initial

information they wanted, they could not anticipate follow-up questions and that, as some specific examples of the deficiency of the proffer, Mr. Snyder had failed to provide the identity or a physical description of the old man, and had failed to give any information why the car was titled in Mrs. Snyder's name. See id. at 6:19-7:23 (Ramirez).

## LAW REGARDING SAFETY VALVE

18 U.S.C. § 3553(f), commonly known as the safety valve, allows courts to impose a sentence below a statutory minimum in certain circumstances. Section 355(f) states that, in the case of an offence under 21 U.S.C. §§ 841, 844, 846, 960, or 963, the court shall impose a sentence in accordance with the applicable guidelines "without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that":

> (1) The defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) The defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) The offense did not result in death or serious bodily injury to any person;
>
> (4) The defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
> (5) Not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or other useful information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f). The fifth requirement for safety-valve eligibility, which has been described

as the "tell all that you can tell" requirement, is very broad, requiring disclosure of everything that the defendant knows about his or her actions and about the actions of those who participated in the crime with him or her. United States v. Acosta-Olivas, 71 F.3d 375, 378-79 (10th Cir. 1995)(internal quotation marks omitted). Disclosure is required "'whether or not it is relevant or useful to the government's investigation.'" United States v. Myers, 106 F.3d 936, 940 (10th Cir. 1997)(quoting United States v. Shestha, 86 F.3d 935 (9th Cir. 1996)).

The burden is on the defendant to prove that he or she meets all the criteria for safety-valve. See United States v. Myers, 106 F.3d at 941. A defendant can meet this burden by showing, "by a preponderance of the evidence, that he qualifies for relief from a minimum mandatory sentence." United States v. Patron Montano, 223 F.3d 1184, 1189 (10th Cir. 2000). To satisfy this criteria, the defendant must affirmatively volunteer all he or she knows, including facts beyond the basic elements of the crime. See United States v. Myers, 106 F.3d at 941.

## ANALYSIS

After the Court granted a continuance of the sentencing hearing, the United States withdrew its objection to Aguirre-Garcia receiving the safety valve. Mr. Snyder, however, did not provide any further information to the United States between the hearings, and the United States continues to object to him receiving the safety valve. The United States contends that Mr. Snyder's proffer of information fails to satisfy the requirements of 18 U.S.C. § 3553(f)(5). The Court agrees.

As the Court stated at the March 2009 hearing, it does not believe that Mr. Snyder is telling a false story, but rather is concerned about the sparseness of the joint declaration. A defendant must provide "all information and evidence the defendant has concerning the offense." Id. This provision is broadly worded, requiring defendants to divulge all that they know about the offenses in which they are involved if they want to receive the benefit of the safety valve. See United States v. Acosta-

Olivas, 71 F.3d at 378-79. Mr. Snyder's proffer is deficient under this standard.

There are, as the United States has contended, too many gaps and too much vagueness in Mr. Snyder's proffer. The Court does not expect Mr. Snyder necessarily to be able to identify the old man or the various "persons unknown" that appear throughout the declaration, but Mr. Snyder likely could have provided more information about them. For example, he could have at least given a physical description of the old man or some other information that might help to identify him. And he could have provided more information about the unknown persons who had Mr. Snyder contact the old man in the first place. Even if Mr. Snyder could not name these persons, he could have explained the circumstances in which he spoke with them, why they might have told him to contact the old man, and why Mr. Snyder was talking with them and decided to call the old man. The declaration is riddled with other examples of persons unknown, without a sliver of identifying information about any of them.

Mr. Streubel argued that the United States has shown nothing more than a special agent's speculation to indicate that Mr. Snyder's proffer is incomplete. The deficiency of Mr. Snyder's proffer, however, is apparent on its face. Solis' testimony that those in the illegal drug trade would not entrust approximately $300,000.00 in cocaine to someone they did not know reinforces the deficiency of the declaration, but Solis' testimony is not necessary for the Court to conclude that the proffer does not reveal everything Mr. Snyder knows about the offenses with which he is charged. Moreover, while the Court agrees that it is possible that the Defendants were being watched the whole time by others the dealers trusted, even if that were true, Mr. Snyder would still be able to provide more information, such as physical descriptions of the old man or an explanation about the rather vague and mysterious encounter with persons unknown that led him to the old man in the first place.

Part of Mr. Snyder's problem is that he refuses to sit down with United States officials and be thoroughly debriefed. While the Court is not saying that a written declaration could never satisfy 18 U.S.C. § 3553(f)(5)'s rigorous demands, such product creates a hurdle. Without an opportunity to cross examine the defendant, the United States and the Court are likely always to have lingering questions. There is no meaningful opportunity to gauge credibility. While Mr. Snyder continues to say the United States can ask further questions, and he would respond further in writing, ultimately, Mr. Snyder bears the burden of proving to the Court that his proffer is complete by a preponderance of the evidence. See United States v. Patron Montano, 223 F.3d at 1189. Here, Mr. Snyder has failed to carry that burden of showing that he has "has truthfully provided to the Government all information and evidence [that he] has concerning" his transporting drugs. 18 U.S.C. § 3553(f)(5). Thus, he is ineligible for safety-valve relief, and the Court will sustain the United States' objection.

**IT IS ORDERED** that the United States' Objection to Application of U.S.S.G. § 5C1.2(a)(1)-(5) as to Roberto Duarte Snyder is sustained.

UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
United States Attorney
Elaine Y. Ramirez
Assistant United States Attorney
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Margaret A. Katze
Assistant Federal Public Defender
Albuquerque, New Mexico

*Attorney for Defendant Rosario Aguirre-Garcia*

David A. Streubel
Streubel, Kochersberger & Mortimer, LLC
Albuquerque, New Mexico

*Attorneys for Defendant Roberto Duarte Snyder*